## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| REGIS F. LUTZ, et al., | CASE NO. 4:09CV2256 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | |
| CHESAPEAKE APPALACHIA, L.L.C., et al., | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANTS. | |

Before the Court are three motions: defendants' Rule 12(b)(6) motion to dismiss (Doc. No. 28);[1] defendants' motion to strike plaintiffs' first amended complaint and corrected first amended complaint (Doc. No. 63);[2] and plaintiffs' motion for leave to file the corrected first amended complaint (Doc. No. 64).[3] For the reasons discussed below, Doc. Nos. 28 and 63 are **GRANTED** and Doc. No. 64 is **DENIED**.

## I. BACKGROUND

Plaintiffs, lessors of interests in natural gas estates in tracts of land located in Trumbull and Mahoning Counties (Compl. ¶¶ 1-5), commenced this purported class action[4] on

---

[1] Plaintiffs filed a memorandum in opposition (Doc. No. 33), defendants filed a reply (Doc. No. 38), and plaintiffs filed a surreply (Doc. No. 40). The Court also permitted the plaintiffs to file a supplemental memorandum in opposition to the motion (Doc. No. 56), in response to which defendants also filed a supplemental memorandum (Doc. No. 57). On February 25, 2010, the Court conducted oral argument and, after the argument, permitted each side to file briefs. (Doc. No. 60 - Plaintiffs' Brief; Doc. No. 65 - Defendants' Brief.)

[2] In response to the motion to strike, plaintiffs filed a motion for leave to file their amended complaint.

[3] Defendants filed an opposition brief (Doc. No. 66) and plaintiffs filed a reply (Doc. No. 67).

[4] A motion to certify the class has been filed, but the Court stayed any action on that motion until the instant motion to dismiss is resolved. (*See* Minutes of Proceedings, Jan. 1, 2010.)

September 30, 2009 by filing their complaint against Chesapeake Appalachia, LLC ("Chesapeake"), Columbia Energy Group ("Columbia"), and NiSource, Inc. ("NiSource"), three entities that are linked through a series of corporate mergers and acquisitions.[5]

Plaintiffs allege that, beginning in 1993, CNR began to deliberately and fraudulently underpay gas royalties in three ways: (1) by deducting post-production costs from the royalty payments; (2) by calculating the royalty payments using a price that was less than the market price of the gas at the time of production; and (3) by calculating the monthly royalty payments using volumes that were less than the volumes actually produced. (Compl. ¶ 20.) Each time CNR's ownership was transferred, the new owner continued these practices, which plaintiffs allege breach their lease agreements. (Compl. ¶¶ 39, 42, 44.)

Plaintiffs further allege that, beginning in 2000 and continuing to 2006, CNR calculated royalty payments by using the low, artificially fixed price of under $3.00 per dekatherm that it had received in two "forward sales,"[6] not the much higher market price of as much as $16.00 per dekatherm. (Compl. ¶ 26.)[7] In these two forward sales, CNR "received full payment up front in cash in exchange for agreeing to sell over 90% of its production prospectively for six years." (Comp. ¶¶ 26, 35.)

---

[5] NiSource (a Delaware corporation that engages in the distribution of electricity and natural gas) merged with Columbia (a Delaware corporation that engages in transmission, storage and distribution of natural gas) taking ownership of an entity called CNR, which Columbia had owned. (Compl. ¶ 38.) NiSource then sold CNR to Triana Energy Holdings, LLC ("Triana") (Compl. ¶ 41) which, in turn, sold it to Chesapeake. When Chesapeake took ownership of CNR, it became the lessee on the natural gas leases at issue in this case. (Compl. ¶ 43.)

[6] The details of the forward sales are set forth in the complaint, where it is alleged that the sales took place in order to secure funding for "golden parachutes" paid to company executives of CEG in connection with a feigned "hostile takeover" of CNR's owner, Columbia, by NiSource. (*See* Compl. ¶¶ 27-37.)

[7] The complaint alleges: "The fixed prices under the first and second [forward sales] were $2.50 per dekatherm and $2.82 per dekatherm, respectively. CNR paid its lessors 1/8th of those amounts during the periods of the contracts, notwithstanding that the applicable market price of gas reflected in the Appalachian Basin Index rose to $10.00 per dekatherm, and then to $16.00 per dekatherm during the periods of the contracts. [. . .]" (Compl. ¶ 37.)

Plaintiffs assert claims for (1) breach of contract; (2) common law fraud; (3) conversion; (4) unjust enrichment; (5) civil conspiracy and joint venture; and (6) indemnification and assumption of liability. They also make a claim for punitive damages and wish to apply the doctrines of *res judicata* and collateral estoppel.

Defendants argue that: (1) because the breaches alleged by the plaintiffs occurred in 1993 and 2000, the claims are barred by the four-year statute of limitations contained in O.R.C. § 2305.041; (2) the fraud claim is not pled with the requisite particularity and is also time-barred; (3) the conversion and unjust enrichment claims fail because they do not allege any obligations apart from those imposed by the alleged contract; (4) the conspiracy claim fails because it does not adequately allege an unlawful underlying act; and (5) the indemnification cannot stand because there is no allegation of an express contractual duty to indemnify. Defendants also argue that there are no independent causes of action in Ohio for punitive damages or for the legal principles of *res judicata* and/or collateral estoppel.

## II. LEGAL STANDARD

When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), its allegations should be construed favorably to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), and its factual allegations, "construed so as to do justice," Fed. R. Civ. P. 8(e), must be accepted as true. *See United States v. Gaubert*, 499 U.S. 315, 327 (1991). The sufficiency of a complaint, however, is a question of law, *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir. 1987), and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). "To survive a motion to dismiss, the complaint must present 'enough facts to state a claim to relief that is

plausible on its face.'" *Gentry v. The Renal Network*, 636 F.Supp.2d 614, 616 (N.D. Ohio 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570) (2007)).

### III. DISCUSSION

A.      **Breach of Contract Claim (Count I)**

Plaintiffs have alleged breaches of contract that occurred on two occasions: in 1993 when the contract was breached by a change in the deduction methodology[8] and in 2000 when the contract was breached by a change in the rate methodology.[9] Defendants' primary argument, both in their motion to dismiss and at the oral argument conducted on February 25, 2010, is that these breach of contract claims are time-barred under O.R.C. § 2305.041, which provides:

> With respect to a lease or license by which a right is granted to operate or to sink or drill wells on land in this state for natural gas or petroleum and that is recorded in accordance with section 5301.09 of the Revised Code, an action alleging breach of any express or implied provision of the lease or license concerning the calculation or payment of royalties shall be brought within the time period that is specified in section 1302.98 of the Revised Code. An action alleging a breach with respect to any other issue that the lease or license involves shall be brought within the time period specified in section 2305.06 of the Revised Code.

O.R.C. § 1302.98, in turn, provides in relevant part:

> (A) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (B) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. [. . .]

Plaintiffs argue that the four-year statute of limitations cannot be applied in this case because it would retroactively extinguish an accrued substantive right. Plaintiffs assert that

---

[8] *See* Compl. ¶¶ 20-25.

[9] *See* Compl. ¶¶ 26-37.

the applicable statute of limitations for their contract claims is fifteen years. In addition, plaintiffs assert that the breaches were "continuing," beginning in 1993 and 2000 and repeating each month thereafter, each time a royalty check was paid.

O.R.C. § 2305.041 became effective on April 6, 2007 and changed the statute of limitations for breaches of oil and gas leases from fifteen years (the ordinary contract limitations period) to four years (the UCC limitations period for sales of goods). Since a statute of limitations is remedial or procedural and not substantive, the legislature could constitutionally change the limitations period. *Smith v. New York Cent. R.Co.*, 122 Ohio St. 45, 48 (1930) ("[e]xcept where constitutional provisions expressly forbid, the Legislature has power to make, amend, and repeal laws relating to the remedy, and make the same applicable, not only to existing causes of action, in which suits have not been instituted, but even in pending suits."). "On the theory that a right to sue once existing becomes a vested right, and cannot be taken away altogether, it does not conclusively follow that the time within which the right may be asserted and maintained may not be limited to a shorter period than that which prevailed at the time the right arose, provided such limitation still leaves the claimant *a reasonable time* within which to enforce the right.*" Id*. (emphasis added) (citing *Terry v. Anderson*, 95 U.S. 628, 633 (1877)); *see also Gregory v. Flowers*, 32 Ohio St. 2d 48, 56 (1972) (citing *Smith*'s recognition that "when a new limitation is made to apply to existing rights or causes of action, a reasonable time must still be allowed in which such rights may be asserted").

As noted above, O.R.C. § 1302.98 provides that a claim accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Therefore, as alleged by plaintiffs, the breaches in this case occurred in 1993 and 2000 when the decisions were made that plaintiffs now claim have caused them injury. Because the retroactive application

5

of the new statute of limitation operated to destroy the right to sue on their contract claims, plaintiffs must be permitted a "reasonable time" to assert those claims so as not to offend the Ohio Constitution's retroactivity clause. Therefore, the question becomes what is a "reasonable time" under the new statute made effective in 2007 for plaintiffs to assert claims that accrued in 1993 and 2000.[10]

Ohio courts have recognized that a two-year period of time after enactment of a new statute of limitations meets constitutional requirements. *See, e.g., Groch v. Gen. Motors Corp.*, 117 Ohio St. 3d 192, 226-27 (2008). O.R.C. § 2305.041 became effective on April 6, 2007. Therefore, a reasonable time for plaintiffs to bring their claims that accrued in 1993 and 2000 would have been no later than April 6, 2009. Plaintiffs, however, brought this lawsuit on September 30, 2009, almost six months too late. For any claim to have been viable based on that filing date, it should have accrued no earlier than September 30, 2005. Plaintiffs do not allege any claims with that accrual date.

Plaintiffs attempt to save their claims by asserting that each monthly royalty payment constituted a separate breach triggering a new accrual period. This theory is contrary to Ohio law. On the very day this Court conducted the hearing in this case, the Ohio Supreme Court rejected a similar argument raised in a mandamus action.

In *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St. 3d 449 (2010), the court was confronted with a mandamus petition brought by property owners ("relators") seeking to compel a park district to commence appropriation proceedings for property allegedly seized and occupied by the district. The park district raised a statute of limitations defense, arguing that,

---

[10] Under the former statute of limitations, the claims which accrued in 1993 need not have been brought until 2008 and those accruing in 2000 could be brought as late as 2015.

under O.R.C. § 2305.09(E), an action for relief on takings grounds must be brought within four years after the cause accrued. The relators argued that this statute was enacted after most of them had acquired their property; they sought instead to apply the "continuous violation doctrine" under which their claims would not be time-barred.

The Ohio Supreme Court relied on a Sixth Circuit case refusing to apply the doctrine in a takings context and distinguishing between continuing *violations* and continuing *effects* of prior violations:

> "'[T]he present effects of past [violations] * * * do not trigger a continuing violations exception.'" *Ohio Midland, Inc. v. Ohio Dept. of Transp.* (C.A.6, 2008), 286 Fed.Appx. 905, 912, quoting *Tenenbaum v. Caldera* (C.A.6, 2002), 45 Fed.Appx. 416, 419. The court explained further that "'[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'" *Broom v. Strickland* (C.A.6, 2009), 579 F.3d 553, 555, quoting *Ward v. Caulk* (C.A.9, 1981), 650 F.2d 1144, 1147.

*Nickoli*, 124 Ohio St.3d at 456. The court concluded that, if it were to adopt a continuing violation doctrine in a takings context, it would "eviscerate the statute of limitations, which would be an untenable result." *Id*. Similarly, in *Ohio Midland*, *supra*, the Sixth Circuit noted:

> If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute "continuing violations," tolling the statute of limitations. There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside of the takings context. This is not the law.

*Ohio Midland*, 286 F. App'x. at 913.[11]

---

[11] In *Ohio Midland*, the owners of a bridge spanning the Ohio River brought an action under 42 U.S.C. § 1983 seeking to compel the Ohio Department of Transportation either to rebuild the bridge ramp it had demolished in 1991 or pay damages resulting from the lack of the ramp, including the bridge's long-term non-use and the plaintiffs' potential liability related to tearing down the bridge pursuant to a demolition order from the U.S. Coast Guard. The court of appeals concluded that plaintiffs' action was time-barred by the relevant two-year statute of limitations because they had been placed on notice in the early 1990's, and at the latest in 1998, that ODOT would not be rebuilding the ramp. They did not commence suit until 2005. The court of appeals rejected the plaintiffs' argument that, because ODOT could have authorized the building of a new ramp at any time prior to the Coast Guard's order of demolition in October 2005, their injury did not become permanent until that later date.

In view of the above law, the Court concludes that plaintiffs' breach of contract claims, which are not "continuing violations," should have been brought by no later than April 5, 2009. Since this action was commenced on September 30, 2009, the breach of contract claims are all time-barred, and therefore subject to dismissal.

## B. Non-Contract and Quasi-Contract Claims

"[U]nder Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). "[A] tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Id*. (citing *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111 (6th Cir. 1976)). Thus, it is not a tort to fail to perform a contractual obligation. Nor can one "convert contract actions into tort actions by attacking the motives of a breaching party, as the motive of a breaching party is irrelevant to a contract action." *Id*. (citing *Ketcham v. Miller*, 104 Ohio St. 372 (1922)); *see also Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 602 (6th Cir. 1988) (under Ohio law, "it is no tort to breach a contract, regardless of motive").

In this case, plaintiffs allege several independent tort claims, all of which arise, if at all, solely out of contractual duties. Plaintiffs can allege no separate duty that defendants have breached.[12] Therefore, the independent tort claims cannot stand.[13]

---

[12] For example, the common law fraud claim in Count II alleges misrepresentations in the reports and documents (apparently, the check stubs) which defendants delivered along with the royalty checks sent to plaintiffs every month. Plaintiffs have pointed to no separate duty in the contract to make such reports and, in fact, state that "defendants' only contractual duty under the leases *is simply to pay the correct monthly royalty.*" (Doc. No. 33, at 10.) To the extent there could be any duty to report on the royalty payments, such duty arises solely from the contractual duty to pay royalties in the first place. If there were no contract, there would be no duty. The conversion claim in Count III relates to the "conversion of monies due to the named Plaintiffs," namely, their full royalty payments under the contracts. The unjust enrichment claim in Count IV asserts that defendants conferred a benefit upon themselves by "improperly withholding from the the named Plaintiffs [. . .] the full amounts of royalties due them [under the contracts]." The civil conspiracy and joint venture claim in Count V alleges that the defendants

Further, although plaintiffs also allege a quasi-contract claim (i.e., unjust enrichment), there are no allegations that the relevant contracts are void in any way such that a quasi-contractual theory would be needed for recovery. Where an express contract exists to afford the plaintiff recovery, a quasi-contract theory is not available.[14] *See Williams v. Goodyear Aircraft Corp.*, 84 Ohio. App. 113, 117 (5th Dist. 1948) ("The law does not recognize the coexistence of a quasi contract and an express contract covering the same subject.").

Finally, "[u]nder Ohio law, '[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss.'" *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (quoting *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 414 (2005)). Here plaintiffs assert that they were paid insufficient royalties. This is purely economic loss.[15]

Accordingly, the Court concludes that all of plaintiffs' non-contractual and quasi-contractual claims must be dismissed.

---

acted together to cause the plaintiffs "to receive less than the full royalty payments due them [under the contracts.]" Clearly none of these purported claims are separate and distinct from the underlying contracts.

[13] In addition, some of the tort claims are barred for other reasons: the common law fraud claim in Count II is barred by the four-year statute of limitations in O.R.C. §2305.09; the civil conspiracy/joint venture claim in Count V is barred by the intracorporate conspiracy doctrine, since plaintiffs allege that Chesapeake and Columbia were agents of NiSource (Compl. ¶ 85) and that the three were involved in a joint venture (Compl. ¶ 87).

[14] Even though there is now no recovery under the contract claims because they are time-barred, plaintiffs cannot recover on the alternate theory. Their inability to recover on the contract theory is attributable to their own failure to timely file their contract claims. The statute of limitations would have no meaning if this Court were to allow plaintiffs to pursue an alternate theory after sitting on their rights under an express contract theory.

[15] Count VII of the complaint alleges a separate claim for punitive damages. Aside from the fact that there is no such separate cause of action in Ohio, *Bishop v. Grdina*, 20 Ohio St. 3d 26, 28 (1985), there can be no punitive damages where there are no underlying damages. Because plaintiffs cannot prevail on any of their other claims, punitive damages are unwarranted. Count VIII purports to state a claim under the theory of *res judicata*/collateral estoppel, somehow claiming a right to recover because of a jury verdict in West Virginia not involving these plaintiffs. *Res judicata* and collateral estoppel are legal principles, not causes of action.

**C.      Plaintiffs' Motion for Leave to Amend the Complaint (Doc. No. 64)**

Plaintiffs seek leave to file a First Amended Complaint[16] to add three counts (Counts IX-Breach of Fiduciary Duty; Count X-Constructive Fraud; and Count XI-Negligence) that are expressly based on the existence of a fiduciary and confidential relationship between the parties growing out of the relevant contracts.[17]

"In determining whether to grant a party leave to amend a pleading, the Court should consider undue delay, bad faith, undue prejudice, futility, the need for additional discovery, and the possible strain on the court's docket." *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, No. 5:08CV1342, 2009 WL 2781749, at * 4 (N.D. Ohio Aug. 28, 2009).

This Court has already decided that plaintiffs cannot recast their contract claims as torts. Amending the complaint to add three additional tort claims would be futile because these claims can no more survive than did the original claims.[18] *Rose v. Hartford Underwriters*

---

[16] Plaintiffs actually, without leave of Court, filed their First Amended Complaint (Doc. No. 59) followed by a Corrected First Amended Complaint (Doc. No. 61). When the defendants filed their motion to strike (Doc. No. 63), plaintiffs then filed a motion for leave to file the Corrected First Amended Complaint.

[17] In addition, the proposed First Amended Complaint adds some language to ¶ 73 of the Complaint regarding plaintiffs' discovery of defendants' alleged wrongful conduct. The added language is shown in underlined text:

> 73. The named Plaintiffs and the members of the Plaintiff Class had no practical way to independently determine the amount of royalty payments due them and reasonably relied on Chesapeake to truly, accurately and properly carry out its duties and responsibilities to account for them the correct amounts of the royalty payments and to pay them such correct amounts. <u>The named Plaintiffs and the members of the Plaintiff Class could not have discovered Defendants' acts of fraud by the exercise of reasonable care and diligence. The named Plaintifffs did not discover the acts of fraud until a month before the filing of the Complaint, and the other members of the Plaintiff Class likely have still not discovered the fraud, and could not have discovered the fraud through the exercise of reasonable care and diligence.</u>

[18] Plaintiffs argue in their reply in support of their motion for leave to amend that "[t]he current law of Ohio is that the same conduct constituting the breach of contract can constitute an actionable tort." (Doc. No. 67, at 4.) They cite generally (without pinpoint citations) *In re Graham Square, Inc.*, 126 F.3d 823 (6th Cir. 1997); *Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376 (1993); *Canderm Pharmacal, Ltd v. Elder Pharm., Inc.*, 862 F.2d 597 (6th Cir. 1998) and *Ali v. Jefferson Ins. Co.*, 5 Ohio App. 3d 105 (6th Dist. 1982). These cases are all distinguishable, however, because they deal with whether punitive damages are available in cases where it has already been determined that there is a tort claim (separate and additional to the contract claim) that can be brought. In the instant case, the Court has determined that all of the alleged tort claims arise out of the contract and cannot be separately brought.

*Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

In addition, effective use of judicial time and resources counsels against allowing an amendment. The motion to dismiss has been very extensively briefed and the Court conducted a hearing on the motion. At no time during these proceedings have plaintiffs even hinted at a possible amended complaint. Now, with briefing on the motion to dismiss virtually complete, plaintiffs raised three potential new claims, initially without any leave of court, and then by filing a motion to amend. The Court sees no good reason to permit plaintiffs to amend the complaint.

## IV. CONCLUSION

For the reasons discussed above, defendants' motion to dismiss (Doc. No. 28) is **GRANTED**; plaintiffs' motion for leave to file a corrected first amended complaint (Doc. No. 64) is **DENIED**; and defendants' motion to strike plaintiffs' first amended complaint (Doc. No. 63) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: 06/18/2010

                                                 **HONORABLE SARA LIOI**
                                                 **UNITED STATES DISTRICT JUDGE**