UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGIS F. LUTZ, et al., | ) | CASE NO. 4:09-cv-2256 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHESAPEAKE APPALACHIA, LLC, | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Before the Court is plaintiffs' renewed motion for class certification (Doc. No. 155[1]), supported by a separately-filed brief (Doc. No. 158 ["Mot."]) and two separately-filed exhibits (Doc. No. 159[2] and Doc. No. 161[3]). Defendant filed a memorandum in opposition (Doc. No. 162

---

[1] Attached to the motion is the May 28, 2014 Deposition of Joseph Yochman (Doc. No. 155-3 ["Yochman Dep."]) and the May 28, 2014 Rule 30(b)(6) Deposition (also of Joseph Yochman) (Doc. No. 155-4 ["Rule 30(b)(6) Dep."]). Together these total almost 200 pages. Yet plaintiffs' only citation to either deposition is a "see generally" citation contained in ¶ 14 of the motion, with no pinpoint page citation to either deposition. This exact same citation is repeated in plaintiffs' brief. (Mot. at 4309.) This is of little help to the Court, which has no obligation to comb through these depositions looking for support for plaintiffs' motion. *See Sumpter v. Wayne Cty.*, 868 F.3d 473, 490 (6th Cir. 2017) ("We have said time and again, district courts cannot be expected to dig through the record to find the seeds of a party's cause of action. . . . The district court had no obligation to do plaintiff's work for her[.]") (citation omitted).

[2] Doc. No. 159 is Exhibit 2 to the motion and consists of a list of oil and gas royalty cases certified as class actions. Plaintiffs seem to be suggesting, by way of this list, that, since other courts have certified classes in oil and gas settings, this Court should, too. Of course, a long list of cases, by itself, tells this Court nothing. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.") (quotation marks and citation omitted).

[3] Doc. No. 161 is Exhibit 1 to the motion -- a manually filed compact disc. Plaintiffs' motion represents that this CD contains copies of leases obtained from defendant during discovery. (Doc. No. 155 at 4074.) The "lease file" consists of over 38,000 pages with Bates numbers from CHK00009 to CHK39003. The Bates numbering would suggest, as plaintiffs claim, that there are 38,994 pages; but the PDF document has only 38,082 pages. Presumably, there are pages missing within the range of the Bates numbers; the Court has not done a "page check" to confirm or refute this suspicion. This huge document contains no index or table of contents, and there are no identifying bookmarks in the PDF document. The closest thing to a "navigation tool" are the charts contained in plaintiffs' motion to certify.

["Opp'n"]) and plaintiffs filed a reply (Doc. No. 164 ["Reply"]). Plaintiffs also submitted supplemental authority (Doc. No. 165)[4], as did defendant (Doc. No. 169). For the reasons set forth herein, plaintiffs' renewed motion for class certification is **denied**.

Also before the Court is plaintiffs' motion for leave to serve a supplemental damages report, which belatedly seeks to add plaintiffs' expert's calculation of class-wide damages. (Doc. No. 170.) Defendant opposes this motion (Doc. No. 173), and plaintiffs filed a reply (Doc. No. 174). In view of the ruling herein denying class certification, supplementation of plaintiffs' expert report is not necessary; the original report already contains the expert's damages calculations for the named plaintiffs. Therefore, the motion for leave to supplement (Doc. No. 170) is **denied**.

## I. BACKGROUND

Plaintiffs initiated this putative class action on September 30, 2009. (Doc. No. 1.) There are five named plaintiffs -- four individuals (Regis F. Lutz, Marion L. Lutz, Leonard W. Yochman, and Joseph L. Yochman) and one limited liability company (C.Y.V., LLC). Each plaintiff is a lessor of interests in natural gas estates in tracts of land -- the Lutzes' land and C.Y.V.'s land is in Trumbull County and the Yochmans' land is in Mahoning County. The complaint generally alleges that all of the plaintiffs have been underpaid on their natural gas royalties by Columbia Natural Resources, Inc. (renamed Chesapeake Appalachia, L.L.C. when it was acquired by Chesapeake Energy Corporation in 2005).

On June 10, 2018, this Court granted defendant's motion to dismiss, finding the contract claim time-barred and finding no independent basis for the remaining tort claims. (Doc. Nos. 68, 69.) On plaintiffs' appeal, the Sixth Circuit held that each royalty underpayment triggered a new

---

[4] Defendant filed a response to plaintiffs' supplement. (Doc. No. 166.)

accrual period, and concluded that the contract claim in Count I of the complaint should survive as to any claims for underpayment of royalties that occurred within four (4) years of the filing of the complaint, that is, back as far as September 30, 2005. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 470 (6th Cir. 2013). The court of appeals also held that plaintiffs may be entitled to equitable tolling on the basis of fraudulent concealment, but that this was a matter for summary judgment or trial. *Id.* at 476. The court affirmed this Court's dismissal in all other respects. *Id.*

On remand, the parties filed cross-motions for summary judgment, and plaintiffs moved for class certification. On October 30, 2014, on the parties' joint motion, class certification briefing was suspended and the motion was denied without prejudice to renewal, pending the outcome of the dispositive motions. On April 1, 2015, having consulted with counsel, the Court certified a question of Ohio law to the Ohio Supreme Court (*see* Doc. No. 130), which, on June 3, 2015, accepted certification. But on November 2, 2016, Ohio's high court declined to answer the certified question. (*See* Doc. No. 135.)

On August 18, 2017, defendant renewed its motion for partial summary judgment. After full briefing, on October 25, 2017, the Court entered its ruling as to the four issues defendant's motion had raised:

> Chesapeake seeks partial summary judgment on the following issues: (1) on its counterclaim seeking a declaration that, to the extent plaintiffs have leases with royalty clauses valuing the royalty payment "at the well," royalties under such leases must be paid based on the value of gas "at the well," and not at any other location; (2) on its counterclaim seeking a declaration that it has complied with plaintiffs' "at the well" leases by paying a royalty based on the market value of gas at the wellhead; (3) on plaintiffs' "line loss" claim with respect to all of plaintiffs' leases; and (4) on plaintiffs' claim that the statute of limitations was equitably tolled due to fraudulent concealment.

(Doc. No. 142 ["MOO"] at 3998.) The Court linked issues (1) and (2), holding that, for "at the well" leases, "the *location* for valuing the gas for purposes of computing the royalty was 'at the

3

well'" (*Id.* at 4005 (emphasis in original).) The Court "decid[ed] only the legal question raised by these [first] two issues, not any factual question . . . of whether the dollar amounts paid by defendant at given time were correct under the legal interpretation that [was] determined [therein]." (*Id.* at 3998.)[5]

The third issue -- "line loss" -- was effectively mooted as to the "at the well" leases, and, for the remaining leases, the Court determined that plaintiffs' "three-sentence argument" was insufficient and that "[p]laintiffs [had] provided no evidence to support the allegations of line loss in their complaint . . . [and] made no effort to refute defendant's legal arguments, which the Court [found] persuasive." (*Id.* at 4006.) Summary judgment was granted on the line loss claim as to all leases.

Finally, as to the fourth issue, the Court determined that plaintiffs had "failed to establish that the doctrine of fraudulent concealment entitle[d] them to tolling of the four-year statute of limitations." (*Id.* at 4011.)

As a result of the summary judgment ruling, the sole remaining claim is the breach of contract claim in Count I of the complaint and, in particular, assertions that defendant both (1) paid royalties under all relevant leases based on an incorrect unit price and, (2) made impermissible cost deductions on royalties paid under leases that did not contain "at the well" language.

On February 18, 2018, plaintiffs filed this instant renewed motion for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3). The motion is now fully briefed and ripe for determination.

---

[5] Although the dispositive motion pointed to "at the well" language in only four leases (MOO at 3998), the instant motion for class certification suggests that there may be 32 "at the well" leases. (*See* Mot. at 4301, 4305.)

4

# II. DISCUSSION

**A.**     **Legal Standard**

The sections of Rule 23 (Class Actions) relied upon by plaintiffs provide as follows:

>(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>>(1) the class is so numerous that joinder of all members is impracticable;
>>
>>(2) there are questions of law or fact common to the class;
>>
>>(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>>(4) the representative parties will fairly and adequately protect the interests of the class.
>
>(b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
>\* \* \*
>
>>(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>>
>>>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>>
>>>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>>
>>>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>>
>>>(D) the likely difficulties in managing a class action.

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348,

131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quotation marks and citation omitted). "[A] district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23[,] [and] [n]o class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified[.]" *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (citation omitted). Further, "[c]lass certification is only appropriate when the proposed class is limited by definite and objective criteria." *Zehentbauer Family Land LP v. Chesapeake Exploration, L.L.C.*, No. 4:15CV2449, 2018 WL 3496089, at *2 (N.D. Ohio July 20, 2018) (citation omitted). The burden is on the moving party to prove that the requirements for class certification have been met. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citations omitted).

"In reviewing a motion for class certification, a court must first identify the purported 'class' and determine that the named plaintiffs are members of the class." *Henceroth v. Chesapeake Exploration, L.L.C.*, No. 4:15CV2591, 2018 WL 1453547, at *2 (N.D. Ohio March 23, 2018).

**B.    Analysis**

Plaintiffs assert that there are 76 class leases, 43 of which do not have "at the well" royalty language. "As to [the 43] leases, [p]laintiffs seek class certification on both the claim as to incorrect price and the claim as to wrongful cost deductions." (Mot. at 4301.) They seek to certify the following two sub-classes:

> Sub-Class 1: All persons entitled to royalty payments by Columbia Natural Resources, Inc., Columbia Natural Resources, L.L.C. ("CNR") or Chesapeake Appalachia, LLC at any time from September 30, 2005 to October 10, 2010 pursuant to an oil and gas lease previously held by CNR that grant [sic] rights to produce natural gas from real property in the state of Ohio and the price used to calculate the royalties in one or more months was the fixed price in the Mahonia sale contracts.
>
> Sub-Class 2: All persons entitled to royalty payments by Columbia Natural Resources, Inc., Columbia Natural Resources, L.L.C. ("CNR") or Chesapeake Appalachia, L.L.C. at any time from September 30, 2005 to October 10, 2010

6

pursuant to an oil and gas lease previously held by CNR that grant [sic] rights to produce natural gas from real property in the state of Ohio, the lease does not include "at the well" royalty language, and post production costs were deducted in the calculation of the royalties.

(Reply at 4369, modifying Mot. at 4305.)[6] In addition, plaintiffs seek to include in Sub-Class 1, the 32 "at the well" leases identified in their motion.

Defendant argues that plaintiffs cannot establish commonality, typicality, or adequacy of their representatives under Rule 23(a),[7] nor can they establish predominance, manageability, and/or superiority under Rule 23(b)(3). Each failure, by itself, would be fatal to class certification.

### 1. *Commonality and Typicality (Rule 23(a)(2) & (3)); Predominance (Rule 23(b)(3))*

Commonality requires that there be "questions of law or fact common to the class." Rule 23(a)(2). Plaintiff must "demonstrate that the class members have suffered the same injury[.]" *Dukes*, 564 U.S. at 350 (quotation marks and citation omitted). To demonstrate commonality, plaintiffs must be able to show that "'[t]heir claims … depend upon a common contention … of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Not every common question will suffice. "[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What [the court is] looking for is a common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.

---

[6] September 30, 2005 marks four years before plaintiffs filed suit, the outside limit of the statute of limitations, and October 10, 2010 is the date on which defendant sold the assets at issue. (Opp'n at 4325; Reply at 4368.)

[7] Defendant challenges the element of numerosity only in passing. (*See* Opp'n at 4330 n.5; 4334 n.8.) Since the other elements are dispositive of the Court's class determination, there is no need to address numerosity.

The typicality requirement "often merges with the consideration of commonality because both are 'guideposts' in determining if a class action is economical and whether the claims are interrelated." *Zehentbauer Family Land LP*, 2018 WL 3496089, at *4 (citations omitted). "Typicality will be found when the representative has aligned interests with the class members, and pursuing the personal claims will also advance the class members' interests." *Henceroth*, 2018 WL 1453547, at *5 (citation omitted).

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (quotes and citations omitted).

Plaintiffs argue that "[d]efendant was obligated by the terms of the leases to pay each class member a royalty equal to $1/8^{th}$ of the market value of the gas at the time it was produced." (Mot. at 4306.) They generalize that defendant used an improper method of calculation that was uniform across the putative class. They claim that the "common factual and legal questions[ ] … include whether the use of the fixed price complied with [d]efendant's royalty obligations and whether costs can be deducted from royalties under leases that do not have 'at the well' royalty language." (*Id.* at 4307.)

Defendant argues in opposition that the Court should not ignore that "there are at least ten different lease types that remain at issue[.]" (Opp'n at 4327, citing Mot. at 4302-04.) "Whether Chesapeake breached any given putative class member's lease depends, of course, on the language of the lease." (*Id.* at 4328, citing *Harris v. Ohio Oil Co.*, 48 N.E. 502, 506 (Ohio 1987) ("[Oil and gas] leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.").) *See also Lutz v. Chesapeake Appalachia, L.L.C.*,

71 N.E. 2d 1010, 1013 (Ohio 2016) ("the rights and remedies of the parties are controlled by the specific language of their lease agreement"). Defendant asserts that the legal questions identified by plaintiffs "require a lease-by-lease inquiry -- which destroys commonality[.]" (Opp'n at 4328 (citations omitted).)

Defendant also refutes plaintiffs' assertion that it employed a common methodology, claiming that "'[its] methodology for calculating royalties depends on a host of different factors that are unique to the geography of the wells, such as where the wells are located, what gathering system they are connected to, the governing lease language, and the arrangements that Chesapeake or its predecessors have or had for sales at or near the wellhead.'" (*Id.* at 4329-30, quoting Doc. No. 162-3[8] at 4352.)

Plaintiffs declare that variations in the leases are no barrier to class certification. (Reply at 4362-63, citing Mot. at 4308 n.2 (collecting cases where classes were certified despite allegedly differing royalty clauses).)[9] They also claim that "[t]he *Tawney* fact findings establish" that the defendant calculated royalties using the fixed prices in the Mahonia contracts and took cost deductions for royalty owners in all the Appalachian states, including Ohio. (Reply at 4361.) Plaintiffs point to specific fact-findings from the ruling in *Tawney* (*see id.* at 4367-68), but they offer no legal authority for their assertion that such fact findings must be controlling here. That position seems to exceed the scope of judicial notice. *See, e.g. Coach, Inc. v. Master of Handbags*, No. CV 11-0041 SJO (FMOx), 2011 WL 13220295, at *6 (C.D. Cal. Sept. 20, 2011) (rejecting attempt to leverage the victory plaintiffs received in one case into findings of fact for another)

---

[8] This exhibit is a letter from defendant's counsel to plaintiffs' counsel dated April 25, 2014 wherein defendant "provide[d] further detail regarding six of [its] responses and objections to Plaintiffs' interrogatories[.]" (*Id.* at 4346.)

[9] Plaintiffs also rely upon *Estate of Tawney v. Columbia Nat. Res.*, 633 S.E.2d 22 (W.Va. 2006), where there were 35 different royalty clauses among the leases of the certified class members. *Id*. at 25 n.2.

9

(quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201.")); *see also Marshall v. Bramer*, 828 F.2d 355, 358 (6th Cir. 1987) (noting that "it is generally not appropriate to judicially notice findings of fact made in other cases").

The Court concludes that plaintiffs have failed to establish the requisite commonality, typicality, and/or predominance for class certification. Aside from failing to account for the notable variations in the language of the leases, plaintiffs also fail to refute defendant's interrogatory answers regarding the variation in the method of calculating royalties. Further, although plaintiffs argue that defendant used the fixed prices in the Mahonia contracts, there is no dispute that these prices expired in February 2006, and plaintiffs here cannot claim damages arising before September 2005. Thus, the Mahonia contracts that were central to the class certification in *Tawney* are relevant to only a small fraction of the months at issue here. Plaintiffs have presented no evidence that any other "fixed price" was used to calculate their royalties.

Generally speaking, although plaintiffs claim that they were all underpaid on their royalties, this is the type of "abstract level of generalization" that has been criticized by the Sixth Circuit as an insufficient basis to argue that there is a common question at issue for the entire putative class. *See Sprague*, 133 F.3d at 397.

### 2.  *Adequacy (Rule 23(a)(4))*

The inquiry into whether class representatives will fairly and adequately protect the interests of the class has two prongs. First, the named plaintiffs must "have common interests with the unnamed members of the class," and, second, "it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted).

Here, plaintiffs state that there are five named plaintiffs -- four individuals and a limited liability company. Two of the four individuals (Regis and Marion Lutz) -- whose leases are of the "at the well" variety -- are actually joint lessors, both of whom, by plaintiffs' admission, are no longer capable of participating as class representatives due to their ages. (Mot. at 4309.) The other two individuals (Leonard Yochman and Joseph Yochman) are father and son, and again plaintiffs admit that Leonard Yochman's age prohibits him from participating as a party representative. *Id.* The final named plaintiff is a limited liability company. It is unclear how a corporate entity can qualify as a suitable representative for the putative class. But defendant acknowledges that Joseph Yochman operates C.Y.V. and is its corporate representative (Opp'n at 4333 n.7), and the Court notes that Joseph Yochman was deposed as the Rule 30(b)(6) representative of C.Y.V., LLC.[10]

Defendant points out that C.Y.V. is not a suitable class representative because its two leases each have different royalty language (one valuing the royalty payment "at the well" and the other requiring payment of royalties on oil and gas "produced and saved" from the land, "free of cost[.]" (Opp'n at 4333, citation omitted.)[11] In addition, one of the sub-classes plaintiffs seek to certify would include lessors who had post-production costs deducted from their royalties. But, according to defendant, C.Y.V. is not among that group. (*Id.*)

Defendant has not specifically challenged Joseph Yochman as a class representative,[12] but the Court concludes that plaintiffs' singular assertion that Yochman "is in good health, has a good

---

[10] But, defendant also argues that, if Joseph Yochman is the party representative for C.Y.V., then numerosity might be implicated because the C.Y.V. lease contains "free of cost" language that defendant claims is only in three other leases. (Opp'n at 4334 n. 8.)

[11] Although the Court finds no mention of C.Y.V. as a lessor in the various charts of lessors submitted by plaintiffs in their motion, according to the Rule 30(b)(6) deposition of Joseph Yochman, the owner of C.Y.V., C.Y.V. is a lessor under the March 18, 1970 lease with Murphy Oil Co. that it acquired from John Stanowski. (Doc. No. 155-4 at 4219-21; Doc. No. 164-5.)

[12] Yochman apparently inherited the July 2, 1970 lease with Murphy Oil Co. originally held by his grandmother, Mary Yochman. (Doc. No. 155-3 at 4094-95; Doc. No. 164-6.)

working knowledge of the case, understands his responsibilities as a class representative and will continue to serve competently as a class representative[,]" (Mot. at 4309), is little more than unsupported conclusory statements. The adequacy of a class representative has to be based on more than good health and good will.

Defendant also challenges the adequacy of class counsel, asserting that they have not demonstrated the requisite "standard of practice which *exceeds* the 'usual quality of practice' before a federal court." (Opp'n at 4334, quoting *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) (emphasis added by defendant) (further citation omitted).) In particular, defendant challenges counsel's pre-suit investigation as it relates to the adequacy of class representatives, noting that the time between counsel's solicitation letter to potential plaintiffs and the filing of the complaint was only three weeks. (Opp'n at 4334.) Defendant also argues that counsel's "fail[ure] to conduct a single deposition of anyone despite having ample opportunity to do so[]" is further proof of their inadequacy. (*Id.* at 4334-35.)

The Court is in no position to comment on the professional competency of class counsel, but it can comment on the adequacy of counsel's representation as evidenced by the record in this case. The Court would be hard-pressed to conclude other than that class counsel's entire argument for class certification is based on the fact that classes have been certified in other cases. In addition, it appears to the Court that class counsel are relying almost entirely on successes in some other cases, and assuming that those successes will require a certain outcome here. They even go so far as to suggest that this Court should simply accept as true findings of fact made by another court, without offering any legal authority for doing so and without showing that this case bears any

relationship to the other case from a factual standpoint.[13] From the outset of this case, whenever a substantive motion has been filed and briefed, plaintiffs' position has been very poorly articulated and, at times, has been a "moving target." Perhaps this may be the result of a certain complacency regarding the need to separately establish plaintiffs' legal theories and prove their facts before *this* Court, but the Court may only decide this case based upon the information that is properly before it.

For these reasons, the Court concludes that, at the very least, the class representatives -- now consisting of C.Y.V., LLC (apparently represented by Joseph Yochman) and Joseph Yochman, individually -- are inadequate to represent either of the two classes proposed by the plaintiffs. That fact alone, even if counsel is adequate, would be reason under the case law to deny certification.

### 3. *Manageability and Superiority (Rule 23(b)(3))*

Finally, defendant argues that, "[g]iven the many differences [already] outlined above, as well as the fact that any classwide recovery is less than $21,000, it is clear that a class action here is neither manageable nor superior." (Opp'n at 4336; Doc. No. 162-2, Declaration of Ragan Naresh ¶ 7.) Defendant claims that "where, as here, a case would devolve into many different mini-trials, class certification satisfies neither 'manageability' or 'superiority.'" (*Id.*) In addition, "[w]hen the

---

[13] *See* Reply at 4361 ("The *Tawney* fact findings establish that [d]efendant and its predecessors (1) calculated the royalties of all leases using the fixed prices in the Mahonia contracts and (2) took cost deductions.") Although this Court may take judicial notice of another court's records (*e.g.*, those of the court in the *Estate of Tawney*), and may accept a copy of another court's findings of fact as authentic, that does not mean this Court is free to accept the findings themselves as true, that is, as established facts for purposes of this case. Although there may be room for arguments based on collateral estoppel or issue preclusion, no such arguments have been made. Plaintiffs simply declare that "[t]he trial court in *Tawney* detailed the ways in which the royalties were underpaid in a 101-page opinion[,]" (Mot. at 4300), as if that were dispositive of the issues in this case.

13

potential recovery in a class action is low, courts have found that the superiority requirement is not met." (Opp'n at 4337, citing *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129-30 (2d Cir. 2016).)

Plaintiffs argue in reply that defendant's premise that there will need to be mini-trials is incorrect, as evidenced by the *Tawney* case where there were 35 different royalty clauses, but just one issue: whether it was proper to base royalties on the Mahonia sale price. (Reply at 4373.)

As already pointed out, the Mahonia contract price was the key issue in certifying the class in *Tawney*, whereas here, due to the time parameters, that fixed contract price has more limited impact from a class certification standpoint. Defendant has the better view on manageability and superiority.

### III. CONCLUSION

For the reasons set forth herein, plaintiffs' renewed motion for class certification (Doc. No. 155) is **denied**.

**IT IS SO ORDERED**.

Dated: October 5, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**